UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUPER LAUNDRY EQUIPMENT CORP., <br><br>        Plaintiff, <br><br>    v. <br><br> STEVE CHAN, et al., <br><br>        Defendant. | Civ. A. No. 13-7381 <br> (NLH)(AMD) <br><br> **OPINION** |

**APPEARANCES:**
MATTHEW A. GLAZER, ESQ.
CALLI J. PADILLA, ESQ.
COZEN O'CONNOR, P.C.
457 HADDONFIELD ROAD, SUITE 300
CHERRY HILL, NJ 08002-2220
    On behalf of Plaintiff

STEPHEN J. BUIVIDAS, ESQ.
LAW OFFICES OF STEPHEN J. BUIVIDAS, ESQ.
1060 KINGS HIGHWAY NORTH, SUITE 301
CHERRY HILL, NJ 08034
    On behalf of Defendant, Steve Chan

HILLMAN, District Judge

    Presently before the Court is Defendant Steve Chan's motion to vacate the default judgment entered against him on January 13, 2014. Also pending before the Court are the cross-motions for sanctions filed by Marc Cooper, Noel Cooper, and Super Laundry Equipment Corp. For the reasons expressed below, Chan's motion to vacate default judgment will be denied, and the cross-motions for sanctions will be granted.

## Background

On December 9, 2013, Plaintiff, Super Laundry Equipment Corporation (Super Laundry) filed a complaint against Defendants, Steven Chan (Chan), N.J. Laundry Corp. (N.J. Laundry), and Noel and Marc Cooper (the Coopers) for replevin, conversion, unjust enrichment, breach of contract, fraud, and consumer fraud arising out of its sale and delivery of commercial washing machines to N.J. Laundry and Chan.

Super Laundry, a New York corporation with its principal place of business in New York, sells commercial, coin-operated laundry machines and related equipment to laundromats and related entities.  N.J. Laundry, a New Jersey corporation with its principal place of business in New Jersey, also sells commercial laundry machines and related services.  Marc Cooper, a citizen of New Jersey, owns N.J. Laundry and employs Noel Cooper, also a citizen of New Jersey, as a sales representative. Chan, a citizen of New Jersey, operates a number of a laundromats in the Philadelphia area.  N.J. Laundry often acts as an independent agent and distributor of laundry equipment for Super Laundry.  It has also dealt with Chan in a laundry related business prior to the arrangement that gave rise to this suit.

In December 2011, the Coopers informed Super Laundry that a potential buyer, Chan, wanted to buy fifty commercial washing machines.  In light of their history together, Super Laundry

agreed to provide these machines to N.J. Laundry in advance of payment, with the mutual understanding that N.J. Laundry would deliver the machines to Chan, Chan would pay N.J. Laundry for the merchandise, and that payment would then be submitted to Super Laundry.  Chan entered into this agreement with an admitted intent to deceive N.J. Laundry by withholding payment from the Coopers, reasoning that it would settle a purported $253,000 debt that the Coopers owed to Chan in connection with a previous deal.  This intent and the alleged debt were not disclosed to Super Laundry.

On December 12, 2011, Super Laundry received a Purchase Order for the fifty machines from N.J. Laundry.  Three days later, Super Laundry sent an invoice for the machines to N.J. Laundry.  Meanwhile, Chan submitted two checks to N.J. Laundry in the total amount of $235,469.00.  On December 19, a trucking company hired by N.J. Laundry retrieved the machines from Super Laundry and delivered them to Chan in Philadelphia.  After the delivery, the Coopers realized that Chan's checks had been altered and informed Super Laundry that they were worthless.  Super Laundry requested that Chan either return the machines or submit the appropriate payment, but Chan refused to do so.  Weeks later, Chan was arrested and charged criminally with theft by deception, forgery, bad checks, and securing execution of

3

documents by deception, among other offenses, in connection with these transactions.[1]

To recover the machines, or at least their value, Super Laundry filed suit against Chan, N.J. Laundry, and the Coopers. Although Chan was served with notice of the suit on December 11, 2013 by a professional process server,[2] he has not answered the complaint. As a result, this Court entered default and default judgment against him in the amount of $240,557.45 on January 13, 2014. Chan admits in his Certification that on January 14, 2014

---

[1] By letter dated May 14, 2015, counsel for Plaintiff informs the Court that Mr. Chan failed to appear for his criminal trial in Philadelphia on May 4, 2015. According to the letter Mr. Chan's criminal attorney informed the court that Mr. Chan was not in the United States at that time.

[2] Chan contends in his Motion to Vacate Default Judgment that he was not properly served, and thus had no notice of the suit until default judgment was entered against him. According to the Proof of Service provided by Super Laundry, however, it is evident that Chan was personally served with process on December 16, 2013 by a professional process server at 2994 Mt. Ephraim Avenue, Haddon Township, N.J. at 1:50 p.m. This is an address across the street from Chan's admitted home address and is the commercial address for J&K Laundromat, a commercial address associated with Chan.
   According to Fed. R. Civ. P. 5(b)(2), a paper is properly served when handed to a person (Fed. R. Civ. P. 5(b)(2)(A)), or left at the person's office with a person in charge (Fed. R. Civ. P. 5(b)(2)(B)(i)). Because the Proof of Service produced by Super Laundry provides, under penalty of perjury, that Chan was personally served at an address associated with one of his laundromats, service of the suit against him was executed properly and in accordance with Fed. R. Civ. P. 5(b).
   Super Laundry also asserts in its June 19, 2014 letter to the Court that all Orders and Notices had been served upon Chan in accordance with Fed. R. Civ. P. 5(b)(2)(C) in that they had been sent via regular mail to all of his last known addresses.

counsel for Super Laundry notified him via letter of the substantial default judgment entered against him. Chan took no steps to satisfy the judgment or rebut it until filing the motion currently under consideration here.

On May 22, 2014, this Court ordered Chan to appear for a deposition by June 30, 2014, in connection with the complaint still existing against the Coopers. Although the Court notified Chan that failure to comply with the Order would result in the imposition of sanctions, he failed to appear for any of the three depositions that Super Laundry's counsel scheduled.

On July 9, 2014, this Court entered an Order for a Writ of Replevin, directing that three commercial washing machines that had been delivered by N.J. Laundry to Chan at 413 E. Allegheny Avenue, Philadelphia, Pa. be taken from the premises by U.S. Marshals and delivered to Super Laundry. On July 23, 2014, this Court executed a Use of Force Order in connection with the Writ. Upon inspection of the premises, U.S. Marshalls were unable to locate the machines at the address.

On September 12, 2014, over nine months after the complaint had been filed, and eight months after the Court entered default and default judgment against him, Chan filed a motion to vacate the judgment.[3]

---

[3] Super Laundry and the Coopers have filed motions for sanctions and attorneys' fees against Chan for his conduct in this

## Discussion

### A. Jurisdiction

This Court has subject matter jurisdiction over Super Laundry's claims pursuant to 28 U.S.C. § 1332(a) because all parties are citizens of diverse jurisdictions and the amount in controversy, exclusive of interests and costs, exceeds $75,000.

### B. Standard for Setting Aside a Default Judgment

Pursuant to Fed. R. Civ. P. 60(b), a court may relieve a party from a final judgment due to:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

The Third Circuit has expressed a preference for cases to be resolved on the merits, rather than on default; as such, it has directed that Rule 60(b) be given a liberal construction and any doubts be resolved in favor of setting aside the judgment.

---

litigation. (See Docket Nos. 35 and 38.) By way of the accompanying Order, this Court will direct Chan to show cause as to why such sanctions should not be imposed upon him.

United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984); Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 245 (3d Cir. 1951).  A decision to set aside a default judgment is left primarily to the discretion of the district court.  Tozer, 189 F.2d at 244.  In making that decision, the court must consider (1) whether the plaintiff will be prejudiced if the default is lifted; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct.  $55,518.05 in U.S. Currency, 728 F.2d at 195.  Only after a careful study of these considerations should a court decide to open a default judgment.  Tozer, 189 F.2d at 245.

**1. Prejudice to plaintiff**

In assessing a defendant's motion to vacate default judgment, the court must first consider whether setting aside the judgment will inflict prejudice upon the plaintiff.  Prejudice is established where a plaintiff's ability to pursue a claim has been hindered as a result of the defendant's delay; such hindrance may arise by loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment.  Feliciano v. Reliant Tooling Co., 691 F.2d 653, 657 (3d Cir. 1982).  Delay in realizing satisfaction on a claim does not amount to the level of

prejudice required to prevent the opening of a default judgment. Id. at 656-57.

Chan argues that no prejudice will result from setting aside the default judgment because Super Laundry has not suffered any loss of evidence and it has not tried to enforce the judgment or placed substantial reliance upon it. This argument is unsupportable. If default judgment is set aside, Super Laundry will be prejudiced for a number of reasons.

First, if judgment is set aside, Super Laundry claims against Chan will be re-set to square one despite its diligent efforts to litigate this matter both before and after judgment. Super Laundry has gone to great effort and expense in instituting this action, obtaining judgment after proper service, and obtaining an ultimately unsuccessful Writ of Replevin and Use of Force Order from the Court.

Importantly, due to Chan's delay, a key piece of real evidence has been lost: the washing machines. These fifty machines serve as the basis for this case and the foundation for Super Laundry's claims. Without this evidence available, Super Laundry has been hindered in its pursuit of redress.

Finally, Super Laundry's substantial reliance upon the Court's entrance of default judgment against Chan is clear in its pursuit of the machines. Not only has Super Laundry attained default judgment, but it has tried to enforce that

judgment by obtaining the Court's Order for a Writ of Replevin. The fifty machines at issue, and their accompanying $239,708.00 price tag, embody a substantial amount of merchandise for Super Laundry, and Super Laundry has relied on the Court's entry of default judgment against Chan to attempt to locate and secure that merchandise.

In light of this loss of evidence and the substantial reliance Super Laundry has placed on the Court's entrance of default judgment, the prejudice consideration weighs in favor of upholding default judgment against Chan.

**2. Meritorious Defense**

Although listed second, the threshold question in assessing a motion to vacate a default judgment is whether the defendant has established a meritorious defense to the plaintiff's claims. $55,518.05 in U.S. Currency, 728 F.2d at 195.  In the absence of a meritorious defense, "there would be no point in setting aside [a] default judgment" because the defendant could not demonstrate the possibility of his winning at trial.  Id. at 195.  The Third Circuit has recognized that a defendant does not "have the right to have a default judgment set aside automatically upon alleging a defense;" the standard is more stringent: a defendant must set forth, with some specificity, the grounds for his defense.  Harad v. Aetna Cas. & Sur. Co.,

9

839 F.2d 979, 982 (3d Cir. 1988). A defendant has established a meritorious defense when the allegations put forth in his or her answer, if established on trial, would constitute a complete defense to the action. Tozer, 189 F.2d at 244. Simple denials, ambiguous conclusions, mere quotations of rules and statutes, and threadbare assertions do not establish a meritorious defense. United States v. Holohan, No. 11-4017, 2012 WL 2339755, at *2-*3 (D.N.J. June 18, 2012).

Chan offers a number of responses to Super Laundry's complaint, none of which are specific enough to establish a meritorious defense. He contends that, because he is not in privity with Super Laundry, there cannot be a contract action; that there is no evidence that he defrauded Super Laundry; that he does not have the washing machines in his possession; and that he paid for the washing machines provided by Super Laundry. None of these simple denials, ambiguous conclusions, or threadbare assertions amount to a defense or provide a response specific enough to demonstrate a possibility of Chan's winning at trial.

First, because Super Laundry does not assert a breach of contract action against Chan, his lack of privity defense need not be addressed. Page eight of Super Laundry's complaint asserts a breach of contract action against N.J. Laundry, not

10

Chan. As such, any defense to breach of contract asserted by Chan is unneeded and superfluous.

Second, because Chan "admittedly carried out a deception against N.J. Laundry," as he pointed out on page five of his Motion to Vacate Default Judgment, any assertion by Chan that he did not defraud Super Laundry, the provider of the machines and intended recipient of the payment, is not only contradictory, but unsupported. It is this type of simple denial that the courts within the Third Circuit have held to not establish a meritorious defense. Chan committed fraud when he represented to N.J. Laundry, and indirectly, to Super Laundry that he would pay for the machines, when in reality he had no intention of doing so. Chan has admitted to this deception and fails to set forth a meritorious defense to fraud.

Third, because Chan admittedly came into possession of the machines, the assertion that the machines are not currently in his possession, even if true, does not constitute a meritorious defense to Super Laundry's claim for conversion or replevin. It is accepted law in New Jersey that a defendant need not have actual possession of the goods sought to be returned in order for the plaintiff to maintain an action of replevin against him; if defendant exercises control over the goods, the action may remain. Schwartz v. King Realty & Inv. Co., 107 A. 154, 155 (N.J. Sup. Ct. 1919) aff'd sub nom Schwartz v. King Realty &

11

Invest. Co., 109 A. 567 (N.J. 1920). As such, Chan's assertion that he does not currently have possession of the machines does not apply as a valid defense to replevin. Additionally, because Chan exerted control over the machines and deprived Super Laundry of lawful possession of the machines, whether he currently has physical possession of the machines or not is immaterial; Super Laundry has been deprived of its tangible property as a result of Chan's possession and control of it. Therefore, Super Laundry's claim for conversion is valid and unchallenged by any valid or meritorious defense proffered by Chan.

Finally, Chan's assertion that he is not amenable to suit because he paid for the machines fails as a defense. Not only did Chan admit an intent to deceive N.J. Laundry by not paying for the merchandise, but the checks he did provide were found to be altered and worthless. The criminal charges asserted against Chan for theft by deception, forgery, and bad checks support the conclusion that he had no intention to pay for the machines that he received. Because his method of payment was fraudulent, it cannot be considered valid compensation for the washing machines. As such, his transmission of altered checks does not provide a meritorious defense.

Because Chan has failed to establish a meritorious defense against the claims asserted by Super Laundry, the meritorious

defense consideration weighs in favor of upholding default judgment against Chan.

### 3. Culpability

The final factor to consider when assessing a motion to vacate default judgment is whether the defendant's default resulted from his or her culpable conduct. A finding of culpability requires more than mere negligence; culpability entails achieving delay willfully or in bad faith. Hritz v. Woma Corp., 732 F.2d 1178, 1183 (3d Cir. 1982). Such conduct may include "acts intentionally designed to avoid compliance with court notices," but is not limited to such knowing disregard for court-mandated procedures; reckless disregard for repeated communications from the plaintiff or the court is sufficient to establish culpability. Id.

Chan asserts that delay was not achieved via culpable conduct because he was not properly notified of the suit until after default judgment had been entered. He also asserts that, upon hearing of the suit, he cooperated with Super Laundry to schedule his deposition. Upon review of the parties' submissions, neither of these assertions reflect favorably upon Chan.

First, as discussed above, Chan received notice, in accordance with Fed. R. Civ. P. 5(b), of Super Laundry's suit

13

against him.  Chan was personally served with process on December 16, 2013 by a professional process server at an address across the street from his admitted home address; this address is also that of J&K Laundromat, a commercial entity associated with Chan.  Chan was also served, in accordance with Fed. R. Civ. P. 5(b)(2)(C), in that all Orders and Notices were served via regular mail at all of his last known addresses.  Even though Chan was properly notified of the suit against him, he waited almost nine months to respond to it in any meaningful way.  Chan admits in his Certification that he did "not take action previously to set aside the judgment against [him] because [he] naively hoped that the matter would be resolved satisfactorily once [he] explained the facts and circumstances to counsel."  This proves that Chan knew of Super Laundry's suit and the default judgment against him and still failed to respond to either action for almost nine months.  This is not an innocent mishap or a mistake; it is a knowing, conscious disregard for court proceedings.

    Throughout this proceeding, Super Laundry repeatedly sought Chan's appearance for deposition.  Upon Magistrate Judge Donio's Order that Chan appear for deposition, Super Laundry again hired a process server to serve process upon Chan at the 2994 Mt. Ephraim Avenue address, the location at which service of the complaint was effected.  Although the process server failed to

14

serve Chan with the Order, he spoke to Chan on the phone on May 17; Chan informed the process server that his correct address was 2995 Mt. Ephraim Avenue, that he was currently visiting family in Boston, and that he would return home on May 23. Service was then sent to the 2995 address, but returned, stamped "Attempted, Not Known" and "Return to Sender – Moved, Left No Address – Unable to Forward." Subsequent, repeated attempts to serve Chan at the two locations, along with trips to the Philadelphia location where the washing machines were delivered, proved unsuccessful. Although Chan asserts that he attempted to cooperate with Super Laundry in sitting for a deposition, the efforts taken by Super Laundry in locating Chan, the conversation the process server had with him on May 17, and the overall failure of Chan to appear for any deposition,[4] prove otherwise.

Chan's refusal to answer Super Laundry's complaint, repeated failure to attend any of the court-ordered depositions,

---

[4] Magistrate Judge Donio's May 22, 2014 Order compelling Chan to appear for deposition outlines Super Laundry's numerous attempts to depose Chan. On February 22, 2014, Super Laundry served, by way of personal service, a subpoena upon Chan to testify at a deposition on March 14; Chan failed to attend, citing "car problems" and "transportation" issues, but stated that he could attend on March 20. Chan was served with a Notice of Deposition to be taken on March 20, but failed to attend that deposition as well. Finally, Judge Donio ordered Chan to appear for deposition by June 30, 2014. A deposition was scheduled for May 22, but Chan again failed to attend.

and delayed response to the entry of default judgment against him illustrate his willful disregard for court proceedings and establish culpability. As a result, the culpability consideration also weighs in favor of upholding default judgment against Chan.

## Conclusion

In light of the prejudice that Super Laundry will suffer if default judgment is vacated, Chan's failure to assert a meritorious defense, and the culpability that he has demonstrated in achieving a delay in these proceedings and his admission that he obtained the machines by deception, Chan's motion to vacate default judgment is denied. Default judgment against him will remain until he can demonstrate either that he is in possession of the washing machines and can return them to Super Laundry, or he can place $240,557.45 in an escrow account earmarked for Super Laundry.

Additionally, because of Chan's conduct as described in this Opinion and in the other parties' cross-motions for sanctions, coupled with the fact that Chan has not opposed the cross-motions for sanctions, the Court finds that Chan's culpable conduct warrants the imposition of sanctions. As directed in the accompanying Order, the cross-motions for sanctions will be granted, and the parties shall file

certifications in support of their requested sanctions.  Chan will be afforded 15 days to respond to the certifications.


Date:    June 29, 2015                s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.